■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VAUGHN RHODES, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Dubin, J.), rendered January 8, 1980, convicting him of robbery in the second degree, upon a jury verdict, and imposing sentence. Judgment affirmed. At trial on the defendant's robbery indictment, it was undisputed that he had a physical altercation with the 82-year-old complainant. The essential issue concerned the nature of that altercation. The complainant testified that the defendant grabbed her change purse. The defendant testified that, after asking him for directions, the complainant became upset, grabbed his arm, and pulled at his clothing. According to the defendant, a struggle ensued in which he tried unsuccessfully to extricate himself from the complainant's grasp and, when he could not free himself from her grip, he bit

her. As evidenced by their verdict, the jurors resolved the crucial credibility issue in favor of the complainant. On appeal, the defendant contends that the trial court committed errors which deprived him of a fair trial. He first argues that the court erroneously permitted a witness, Otis Smart, to testify as to statements made to him by third persons at the scene of the crime. Among those statements, which referred to the defendant, was the comment "why would he hassle an elderly lady." Smart further testified that "[o]ne man said he wanted to kick [the defendant's] ass." We agree with the defendant that the statements should have been excluded. We conclude, however, that their admission was harmless error. Smart's testimony regarding out-of-court statements made by others was clearly hearsay (see, generally, Fisch, NY Evidence [2d ed], § 756). The trial court, however, allowed the statements into evidence, apparently as admissions by silence, because the defendant was present when the statements were made (see Richardson, Evidence [Prince, 10th ed], § 222; *People v Egan,* 78 AD2d 34, 36). In this regard "[d]eclarations or statements made in the presence of a party are not received as evidence in themselves, but for the purpose of ascertaining the reply the party to be affected makes to them. They are only competent when the person affected hears and fully comprehends the effect of the words spoken and when he is at full liberty to make answer thereto, and then only under such circumstances as would justify the inference of assent or acquiescence as to the truth of the statement, by his remaining silent" (*People v Kennedy,* 164 NY 449, 457; *People v Allen,* 300 NY 222, 225). Such evidence should never be admitted as an exception to the hearsay rule unless it falls clearly within these guidelines (*People v Allen, supra,* pp 225-226). Although it is undisputed that the defendant was present when the statements were made, there is no affirmative evidence in the record to indicate that he heard and understood the statements (cf. *People v Egan, supra,* p 36; *People v Koerner,* 154 NY 355, 375). Moreover, even assuming that the defendant did hear the statements, "the circumstances must not only be such as afforded him an opportunity to act or to speak, but also such as would properly or naturally call for some action or reply from men similarly situated" (*People v Koerner, supra,* p 374). At the time the alleged statements were made, the defendant was surrounded by bystanders who were threatening him. Indeed, Smart testified that "at this point I decided to take him inside before something will happen [*sic*]". In these circumstances, it was reasonable for the defendant to have thought that the best course for him to follow would be to remain silent rather than to respond to the statements and thereby incur additional wrath from the obviously hostile crowd. Thus, it cannot be said that the situation was such as to naturally call for some reply on the defendant's part. Accordingly, notwithstanding the fact that the defendant was present when the statements were uttered, testimony concerning those statements was improperly admitted into evidence to establish an admission by silence. We further reject the People's suggestion that the statements were admissible as spontaneous declarations (see *People v Caviness,* 38 NY2d 227). Such declarations are admitted for their inherent reliability because of the declarant's proximity to the occurrence, his opportunity to observe the event, his professed shock caused by the incident, and the immediacy of his utterance (*People v Caviness, supra,* p 232). In the instant case, there is no evidence that any of the declarants actually saw the incident. Consequently, the spontaneous declaration exception to the hearsay rule is not applicable. Nevertheless, although we hold that the statements were improperly received in evidence, we conclude that the error was harmless. As earlier noted, it was undisputed at trial that there had been some sort of physical encounter between the defendant and the complainant. The fact that someone at the scene said that the defendant had been "hassling" an elderly lady, therefore, is not inconsistent with the defendant's own version of the events and does not indicate that he had perpetrated

a robbery (cf. *People v Clegg,* 18 AD2d 694). Accordingly, the erroneous admission of the statements does not require reversal. The defendant's second contention is that the trial court erred when it denied his pretrial motion to preclude the prosecutor from questioning him as to three prior prostitution convictions (see *People v Sandoval,* 34 NY2d 371). The extent to which the prosecution should be permitted to impeach the credibility of a testifying defendant through use of his prior convictions is a matter left largely to the discretion of the trial court. The chief purpose of prohibiting the prosecutor from questioning a defendant about certain prior convictions is to prevent the risk that the jury will draw an inference from such evidence that the defendant has a propensity to commit the crime with which he is presently charged (*People v Anderson,* 80 AD2d 33, 39). That risk is remote in the instant case, where the crime charged is totally dissimilar to the prior convictions. Additionally, in determining whether cross-examination concerning prior criminal acts should be allowed, the trial court must balance the probative worth of the evidence of the prior conviction on the issue of credibility against the effect its introduction may have in discouraging a defendant from taking the stand in his own behalf (*People v Williams,* 56 NY2d 236; *People v Johnson,* 64 AD2d 907, affd 48 NY2d 674; *People v Sandoval, supra,* p 375). At bar, the defendant did take the stand notwithstanding the trial court's ruling. Moreover, a defendant may properly be examined regarding any immoral act which has a bearing on his credibility (*People v Schwartzman,* 24 NY2d 241). Prostitution is such an act because it reveals a willingness or disposition to place one's own individual self-interest ahead of the interest of society. In *People v Bennette* (56 NY2d 142), the Court of Appeals recognized that decisions as to whether to permit inquiry into prior crimes may well be affected by the importance that the defendant's credibility assumes at trial. In *Bennette,* the court upheld the Trial Judge's decision to permit the prosecutor to question the defendant, who stood charged with robbery, burglary and assault, about a prior act of sodomy with a minor. Similarly, here, where credibility was the crucial issue, the trial court's decision should not be disturbed. Mollen, P. J., Titone, Bracken and Brown, JJ., concur.