Smith, J.
(dissenting). Because the trial court erroneously admitted into evidence, as an adoptive admission, a written confession by defendant’s brother implicating defendant, and defendant’s response to his brother’s inquiry regarding whether he should sign the confession, I dissent.
I.
In September 1996,. defendant Randy Campney and his brother Burton were arrested for the burglary of a Stewart’s convenience store committed on May 23, 1996 in the Town of Chester, Wárren County. Both defendant and Burton were taken to the police station for interrogation. Defendant immediately invoked his right to counsel.
Burton gave police a statement detailing how he and defendant had burglarized the store. The statement was reduced to a writing and Burton was asked to sign it. Burton requested the opportunity to first speak with defendant who was located in another interrogation room. Once there, Burton privately conferred with defendant for approximately 10-15 minutes. Thereafter, two officers returned to the interrogation room, observed defendant holding the written statement and asked Burton whether he was prepared to sign the statement. Burton, in turn, asked defendant whether he should sign, to which *315 defendant replied, “You might as well sign it, you already told them all about what happened.” Defendant and Burton were subsequently indicted for burglary in the third degree.
Defendant moved to suppress Burton’s written confession and defendant’s response to Burton’s inquiry regarding whether Burton should sign it. At the hearing, the People called two officers as witnesses. Each testified that he neither heard the conversation between defendant and Burton nor saw defendant read the statement. Both testified, however, that defendant was holding the written statement when they entered the interrogation room. Moreover, one officer could not attest to defendant’s response when Burton was asked whether he would sign the written confession. Defense counsel asked and the officers acknowledged that defendant had invoked his right to counsel prior to the time he allegedly responded to Burton’s question regarding whether he should sign the confession.
Defendant also testified at the suppression hearing. He testified that he never told Burton to sign the statement, stating, “That is ludicrous. I never would have said something like that if I had known what was on that paper.” He stated that he had not read Burton’s statement and did not know its contents. Instead, defendant testified that when he and Burton conferred, he was just trying to find out “what had happened” because Burton appeared “confused” and “disoriented.” Again, defense counsel inquired whether defendant had invoked his right to counsel at the time he allegedly made the statement. Defendant responded in the affirmative.
At the conclusion of the hearing, the Judge credited the testimony of the officers and found that a proper foundation was laid for the admission of Burton’s written statement. The court found that the statement was admissible, not as a codefendant’s statement, but rather as “a statement given by a co-defendant that has been adopted, if the jury believes the facts of this case, it’s been adopted by the other defendant.” The court further stated, “I will give * * * [the jury] an instruction as it relates to the fact, whether or not the defendant did in fact say go ahead and sign it. And secondly, by so stating, did he adopt as his own the admission contained in Burton Campney’s statement. There is obviously a dispute to what happened, but that is what juries are for.”
During trial, the People called Burton to testify, in contravention of their initial position not to call him as a witness. Once on the witness stand, Burton recanted his written confession, *316 proclaiming that he committed the burglary alone. Treating Burton as a hostile witness, the People used his written confession to impeach his credibility.
At the close of the evidence, the court charged the jury regarding the use of Burton’s written statement and defen-, dant’s subsequent response. The court instructed,
“you [the jury] must be satisfied beyond a reasonable doubt that the statement number 1, attributed to the defendant was, in fact, made by him and number 2, that by making such statement the defendant adopted as his own the statement of Burton Campney. * * * [I]f you have reasonable doubt as to either or both of those you must disregard the [defendant’s] statement and the statement of Burton Campney and give it no weight whatsoever, as it has no binding effect on the defendant.”
The jury returned a guilty verdict and defendant was sentenced accordingly.
On appeal, defendant argued that the trial court committed reversible error by, among other things, permitting Burton’s written statement into evidence and defendant’s statement as an adoptive admission. The Appellate Division affirmed, with one Justice dissenting.
II.
An adoptive admission occurs when evidence exists to support the conclusion that an accused assents to the truth of a statement made by another (2 McCormick, Evidence, § 261, at 172 [4th ed 1992]). Thus, when a statement or declaration which tends to incriminate one accused of a crime is made in the presence and hearing of that person and such a statement is not denied or objected to by the accused, the statement, as well as the accused’s failure to deny the statement is generally admissible as evidence demonstrating his or her acquiescence to the truth of the statement (People v Allen, 300 NY 222, 225). While the cases cited from this jurisdiction address adoptive admissions by silence, the accused’s failure to deny the declarant’s statement is the significant factor. Thus, “an equivocal or evasive response may similarly be used against the party” either as an adoptive admission by silence or an express assent (2 McCormick, Evidence, op. cit., § 262, at 176).
The statement made in the presence of the accused is received into evidence for the limited purpose of establishing *317 the accused’s response thereto (People v Lourido, 70 NY2d 428; People v Kennedy, 164 NY 449). Such evidence is inadmissible, however, unless a threshold foundation is laid establishing that the accused “heard the assertion and comprehended its implications” (People v Lourido, 70 NY2d, supra, at 433; People v Allen, 300 NY, supra, at 225 [accusation must be “ ‘fully known and fully understood’ ”]; People v Cascone, 185 NY 317, 324; People v Smith, 172 NY 210, 232; People v Kennedy, 164 NY, supra, at 456). Moreover, the statement must be one which, if made in the presence of the accused, he or she, under the circumstances and having the ability or opportunity, would deny (People v Allen, 300 NY, supra, at 225).
Central to the disposition of the instant case is whether the People properly laid the foundation for introducing Burton’s written confession and defendant’s response as an adoptive ' admission by establishing that defendant heard, or in this case at least read, the written confession and fully “comprehended its implications” (People v Lourido, 70 NY2d, supra, at 433; People v Kennedy, 164 NY, supra, at 457; People v Robinson, 140 AD2d 644, 645). This Court has consistently reversed a conviction where insufficient evidence exists to establish that a defendant heard and understood a statement from which his or her reaction was deemed an admission of the truth and veracity of that statement. For example, in People v Lourido (70 NY2d 428, supra), this Court held that the trial court committed reversible error when it admitted into evidence the defendant’s demonstrative response to a police officer’s accusatory query when the People failed to establish that the defendant understood English (see, People v Cascone, 185 NY 317, 329-330, supra; compare, People v Ferrara, 199 NY 414, 424 [accomplice’s statement, “That’s the man that done the cutting,” and the defendant’s nonverbal reaction were admitted into evidence when the People established that the defendant heard the statement, understood the import of the words and was not prevented from responding]; see also, People v Lewis, 238 NY 1, 5).
In this case, it is undisputed that the People failed to establish that defendant read Burton’s statement. Moreover, no one heard the conversation between defendant and Burton. Thus, it is impossible to determine whether Burton fully discussed the written statement with defendant and whether Burton told defendant that he had, in fact, implicated him in the statement (see, e.g., People v Woodward, 50 NY2d 922, 923). The People’s conclusory assertion that defendant “clearly heard and fully *318 comprehended the effect of the statement” is insufficient to overcome its threshold burden of establishing that contention (see, People v Lourido, supra, at 433) . Therefore, without evidence establishing that defendant heard or read the statement and understood its content, defendant’s failure to contradict the assertions therein cannot justify an inference of his acquiescence in the statement’s truth.
Moreover, the Appellate Division’s conclusion that the jury was entitled to “draw whatever reasonable inferences flowed from the direct evidence presented” (256 AD2d 1058, 1059) overlooks this Court’s holding in Lourido which requires that a foundational basis exist before a statement and an adoption thereof are admitted into evidence. In People v Cascone (185 NY, supra, at 329) we stated that “it must plainly appear” from the circumstances that the language, or in this case the written statement, was “fully understood by the party before any inference can be drawn” from the defendant’s response (emphasis supplied; see also, People v Allen, 300 NY, supra, at 225-226 [such evidence “is never to be admitted unless clearly within the rule”]). Here, the trial court had the initial duty of making the threshold determination regarding the statement’s admissibility before any inferences were permissibly drawn. Thus, inasmuch as the facts here do not plainly appear to establish that defendant read and understood the statement, it was reversible error for the trial court to admit Burton’s statement and defendant’s response into evidence (People v Kennedy, 164 NY, supra, at 456-457 [adoptive admissions “should not be admitted unless the evidence clearly brings them within the rule”]; People v Rhodes, 96 AD2d 565, 566; see also, 2 Wright, Federal Practice and Procedure: Crim 2d § 413 [before adoptive admissions are admitted into evidence, it “must appear that defendant understood and unambiguously assented to the statements”]).
Indeed, we have stated that despite the competency of declarations made in the presence of an accused, such evidence is “regarded as dangerous, and should always be received with caution” (People v Kennedy, supra, at 456-457). Tacit adoptions are viewed as dangerous because of the ambiguity of silence. Accordingly, this Court has established the foundational safeguards which serve to minimize the misuse of this type of evidence. The policy rationale underlying this Court’s warning against the use of adoptive admissions is illustrated in the instant case. Because the People failed to demonstrate that defendant heard or read Burton’s statement and understood the *319 implications against him, it is impermissible to conclude that defendant adopted that written statement as his own.
Evidence exists to support the conclusion that defendant’s words were not an adoption of Burton’s statement. Significantly, it is undisputed that defendant immediately invoked his right to counsel upon arrest. Acquiescing in a written statement which incriminated him would be completely contrary to the invocation of his right to counsel. Indeed, the People’s argument that defendant was a “sophisticated defendant” only buttresses this conclusion. Thus, absent the foundational showing that defendant heard or read the statement and understood the implications of advising Burton to sign the confession, the statement should have been suppressed.
Even assuming that circumstantial evidence may be used to indicate an adoptive admission, that evidence here was inadequate.* It is clear that “the circumstantial facts proved must exclude every hypothesis but guilt” (People v Ford, 66 NY2d 428, 433). Where two inferences may be drawn from the evidence, one consistent with guilt and the other consistent with nonguilt, the jury must draw the inference of nonguilt (id., at 441-443). Here, if defendant made the statement attributable to him and told his brother that he might as well sign the statement, it certainly does not lead irresistibly to the conclusion that defendant was admitting his guilt.
Moreover, to date, when this Court has permitted a statement as an adoptive admission, it has been a statement that accused a defendant, and a defendant alone, of the act (see, e.g., People v Ferrara, 199 NY 414, supra). Here, the statement was an admission by defendant’s brother which implicated defendant.
Finally, Burton’s written confession implicating defendant was the only evidence linking defendant to the crime. Thus, it cannot be concluded that any error in admitting this evidence was harmless (see, People v Crimmins, 36 NY2d 230; People v Benanti, 158 AD2d 698; Prince, Richardson on Evidence § 1-208, at 14-15 [Farrell 11th ed]). Accordingly, I vote to reverse the order of the Appellate Division.
Chief Judge Kaye and Judges Levine, Ciparick, Wesley *320 and. Rosenblatt concur with Judge Bellacosa; Judge Smith dissents and votes to reverse in a separate opinion.
Order affirmed.

 The dissent does not contend that an adoptive admission can never be proved by circumstantial evidence. Rather, in this case, the circumstantial evidence is insufficient to prove that the defendant’s statement was an admission of his guilt.